Netflix v. Avago Technologies, 2022, 1800, 2208 Hey, please support. Harper Batts on behalf of Netflix. The parties agree here that the focus of this appeal is limitation 1e, a plurality of image instances of a plurality of software applications that are executable on the plurality of virtual machines. And the board clearly construed this phrase such that executable referred to image instances, not software applications. And the entire analysis of the final written decision on this issue was a single paragraph and really in reality a single sentence. And the construction adopted by the board was not advocated by either party, is wrong and is subject to de novo review. So we explained in our opening brief that the claim language, grammar rules, the specification and their expert's testimony demonstrates that that construction was clearly wrong. When did you first offer your construction to either of the boards in either of the IPRs, the one that you asked us to adopt? The issue of what is executable first came up in the first final written decision because it was not advocated by either party. So I don't think there's been any dispute that neither party asked for this construction. Avago isn't defending this construction. They didn't defend it below and they also haven't defended it in their briefing here. From which it follows that you're acknowledging you did not propose the construction that you're advocating to us until after the final written decision was issued in the first IPR, correct? That is correct, Your Honor. So how can that be proper given, meaning you first presented it in your reply brief in the first final written decision? So isn't that too late for you to offer a claim construction? Absolutely not, Your Honor, because given that neither party had advocated for this claim construction and it was an unanticipated claim construction that's clearly wrong by the board, the first opportunity that we had to argue that claim construction was after the first final written decision issue. That's the first time we had noticed her opportunity. Was there a dispute over the claim construction that arose prior to that, even if neither side actually proposed this resolution to that dispute? There is no dispute as to what executable referred to, whether it referred to software application or image. There was a dispute over the proper construction of limitation 1e as a whole, correct? I don't think so, Your Honor, and the reason I say I pause on answering that is because if we go to, it was a claim construction that we requested for that language, for the 1e language. And what we requested there was for a different issue. The issue was a question of what would constitute an image instance. And we pointed to the dependent claim in the patent itself to say, one image instance could qualify, a virtual machine image file could qualify as an image instance. And Avago, in response, didn't dispute that. They didn't contest that that would satisfy. So with the claim language that we proposed, the claim construction we proposed, we didn't believe there was any ambiguity or need. You know, claim constructions are supposed to address ambiguities in claim language. We didn't believe that there was any ambiguity in the claim language as to what executable referred to. Because as we noted for the grammar rule, the last antecedent grammar rule, I mean, clearly as a grammar rule, it would modify the closer clause, not the remote clause. They didn't address that in their briefing. We also explained that if you look at limitation 1c, I think that's really, really instrumental here because... I'm happy for you to get there, but just one more thing on the procedural status. The proper construction of the limitation 1e was in dispute from fairly early on. Both sides were heard on it. And we know from our case law, the board was not limited in what construction it gave to resolve that dispute. It was not limited to what either party proposed. So it seems that it follows from that. You had fair notice and an opportunity to be heard on the proper construction of 1e. And your construction that you ask us to adopt simply comes up too late. And I'm disagreeing with that, Your Honor, because as I noted, what we asked for construction and what brought the dispute between the two parties about our construction was what would constitute an image instance. But what we did do is we set forth clearly in our petition, we explained that the software applications are executable. And we had explained it in our petition. So there was never an argument. There was an expert argument about this. And in fact, Broadcom took the position in the briefing below that the software applications are executable. Well, I think you also said that image instances need only be executable as well, right? The board called you out on that. That seems entirely inconsistent with you saying now that only software applications have to be executable. Well, I think I have three points to say it on response to that. First is our petition clearly laid out that we were contending that the software applications are executable. So we did that in our petition at Appendix Page 177. And then the corresponding paragraph 137 of our expert declaration we laid out. It's not that it's a very difficult claim limitation to address, that software would be executable. And we pointed out that Condacar specifically teaches software that can execute. So the second point that I would say is that that quote that was pointed, that you're referring to, Your Honor, was for the second theory, which we're not appealing here. And it was addressing this question. The main thrust, the overall thrust of Agha's arguments below was this three-step process argument they had. And it was a question about executable or executing. That's what the parties were. If you look at the, the hearing transcript, the briefing, all the arguments essentially were there. And that's why Agha doesn't even defend this construction. Instead, they're asking you to affirm based upon the three-step process argument, even though the board specifically said it didn't reach that argument. And so, and then I do think it is notable that on Appendix Page 3250 to 3251, Agha stated, quote, Each time a specification uses the phrase on the virtual machines, as used in Claim 1 and 19, the specification refers to software applications executing in the emulated environment. So clearly, there wasn't some sort of dispute about the claim limit. This isn't an example. I think Your Honor is thinking of an example where, yeah, you have a claim limitation dispute. You have two different, you know, proposals by the two different parties. And then the board says, well, I'm not really going with your, your proposal, not your disposal. I'm going to go my own way. I'm going to do a modified version of either of those proposals. There was no dispute below about what was executable. And therefore, I do think this falls within the APA for notice, notice and consideration and consistent with even the Medtronic decision recently by this board, where we're talking about, hey, you, you have to be given an opportunity when a patent owner raises a new claim construction and it's a patent owner response, then you get an opportunity to address it in your reply. This is one step worse in the sense that we didn't even have a patent owner. We didn't have notice from the patent owner response that there was going to be this argument. So we didn't have an opportunity to address it in the reply. It wasn't even discussed at the oral hearing. So it wasn't even like we had an opportunity at the first oral hearing to address this issue. It was literally the first time we see this is in the first final written decision. And if you go to that page of the first final written decision, what we see on page 23 to 24 of the first final written decision, up until page 23, you have basically the board summarizing the two parties' arguments. The first time that they do any analysis here about the arguments is at the very bottom of 23, that one paragraph where they say they agree with the patent owner's arguments. And they simply have a sentence there that says, we didn't show that our, the virtual disk image files for Connacar, the three different types, are executable on the Perotti virtual machines. That's the only analysis. They didn't say anything else. They just said, you didn't show this. You didn't show that the, that the virtual machines are executable, even though the claim language is clearly referring to the software applications. And then the next part of that paragraph, like I said, I think it's a single sentence that's really analyzing this because the next part of that same paragraph, they're actually acknowledging and crediting our actual argument, which is petitioner cites Connacar's teachings that the operating system and applications are operating. So that's the problem that they have here is they didn't do that analysis. They didn't give us an opportunity to address that And what's really notable here in this briefing, I think, in this appeal, is Broadcom isn't contesting that the board made a mistake about that analysis. They keep on saying, well, plain ordinary meaning, plain ordinary meaning. But even when they were asked by the judges in the second final, the second hearing below, they refused to take a position on what the term executable refers to. When we pointed out the claim limitation, I do want to hit that claim limitation 1C. 1C has very parallel language. It says a plurality of image instances of a virtual machine manager, so a software application, that is executable. So clearly not only the rule of last antecedent executable is referring to the software application, the virtual machine manager here, but given that there's a plural in the remote clause and a singular in the near clause, it clearly has to be referring to the software application. And they didn't address the grammar rule at all, other than to say, well, patent cases haven't ever used the grammar rule, and we pointed out that patent cases have actually used the grammar rule. They didn't address this claim language in their brief in any way. They didn't address the specification that we pointed to, column 33, the specification, where we've noted that on appendix page 122, that the specification of the 138 patent talks about operating systems, software applications may execute on virtual machines. So we have the specification support that they didn't address, and we have their own expert's testimony. And I don't know if you noticed, Your Honor, but in their expert's testimony, we actually asked them a question about the image instances executed, and he corrected the questioner and said, well, actually, it's the software applications that are executed. So we have all the evidence for a de novo review of a claim construction showing that the board's claim construction was wrong, and I do want to point out in appendix 3968 to 3971, the judge below in the second hearing asked Avago's counsel on multiple occasions, well, are you agreeing? Do you agree that executable should refer to image instances versus software applications? And they kept on dodging the question, because they know it's wrong. So we have a clear instance here of a claim construction that is wrong, and under de novo review should be reversed, and it should be remanded so that they can consider and do an actual analysis of the theory that we set forth in our petition regarding the software applications being executable. The board says there's like four theories here, but on appeal today, is there anything we have to decide other than the claim construction and whether we can reach the claim construction? So to be clear, they highlight what they call four theories. The second theory is not being appealed, so there's nothing to be done on that one. The first theory and the third theory we contend are the same theory, because they said, well, now you're arguing that the software is executable. The only part of the first theory that's in dispute is the claim construction, correct? Yes, Your Honor. Now what about the fourth theory, the bootable? Is there some other issue for us? So the fourth theory is, I mean, I'm going to be straightforward on this. We did not argue in our petition that the image instances are executable. We didn't foresee that being an issue. That wasn't a theory that we put in the petition. But once we saw the final written decision, it's not like we can put our heads in the sand like an ostrich for the second hearing. We had to say, okay, they told us now that this means the image instance are executable. We need to do both the claim construction we believe is correct, but also with the construction they adopted. So we said, hey, there's still evidence in the record sufficient to show that the image instances are bootable. So Condacar also teaches image instances that are executable. So that wasn't our theory in our petition, but similar to like if a patent owner raised a new claim construction and a patent owner responds, you say, hey, even under that claim construction, it's a timely theory that can be addressed by the board. So that theory would only be, I guess, sorry, that's a little long, but that theory would only be relevant, I think, Your Honor, if the claim construction, if you found that the claim construction stood, then it would be under a question of, well, under that claim construction, which we think is wrong, we still introduced evidence and there's sufficient evidence in the record to find the claims unpatentable. Counsel, you're well into your rebuttal time. Apologies, Your Honor. Do you want to save it? Yes, Your Honor. Thank you. Mr. Young. Thank you, Your Honors. Dan Young from Corals & Brady representing Avago Technologies. There are, as counsel for Netflix set forth, there are a couple of key issues here that make this case actually very straightforward. The first is that only one, Limitation 1E, is at issue. CONACAR is the only prior art reference that they relied on for both the first and the second petition, and they offered a claim construction not just for a portion of Limitation 1E, not just for a plurality of image instances or a plurality of software applications, but for the entirety of that limitation. They said the entirety of that limitation, which also includes that are executable on a plurality of virtual machines, all of it is satisfied by a plurality of disk image files. The board rejected that claim construction, and very importantly, Netflix does not appeal the board's rejection of their proposed claim construction. It's important to understand what the board exactly did with respect to that claim construction. What Netflix argued was that because of Dependent Claim 2, what Dependent Claim 2 says is that not the entirety of 1E, not a plurality of image instances or a plurality of software applications that are executable on a plurality of virtual machines, not the entirety, but just that the image instances can be satisfied by a virtual disk image file. The board said that is improper, because you're reading out the second half of that limitation that says that are executable on the plurality of virtual machines. The plurality of virtual machines in its even basis for that is Limitation 1D. The reason they don't appeal their construction is because they would easily lose that, because if you take Dependent Claim 2 and you substitute it into Dependent Claim 3, what it would say is the virtual disk image files that are executable on the plurality of virtual machines. That last part is completely null and void under their construction. The board said that's a Dependent Claim, because as we said, the second part of that limitation describes how and where those virtual, those image instances of the software applications are deployed, because that's defined in 1D. Help me understand where you disagree with how Netflix characterizes procedurally where we are. There was a dispute over the proper construction of Limitation 1E, and both parties were heard on that, but there were certain portions of the competing proposals that there was no disagreement between the parties on. Isn't that correct? What was very clear is that in the entirety of this case, Netflix took the position that the image instances are what is executable. As you pointed out, the board called them on that. In their reply brief, they said... There are other places where they say it's the applications that have to be executable, aren't there? We were pointed out some of those instances in the record, weren't we? Once the image instance of the software applications are deployed, then obviously the software applications themselves will execute us the whole point. That's not the point of the claim. As you can see, if you took their construction of Dependent Claim 2 and put it into Claim 1, it would say virtual disk image files that are executable on the plurality of virtual machines. What the board did was they said after they rejected their construction, they looked at the petition, which is the same for Limitation 1E in both final written decisions. What they said was, you have not explained how that are executable on the virtual machines. You provide no explanation of how that's satisfied under what you argued in the petition. When the board calls their first theory in their second final written decision, which mirrors the first, there's no question that that, quote, first theory is their proposed construction that the board rejected. The entirety of that, at the very beginning of the petition for Limitation 1E, it says Limitation 1E may be satisfied by A, plurality of virtual disk image files, C, Section 5A, which was their claim construction, which the board rejected. The entirety of the first theory, all it talks about are the three types of VMs, which are image instances. It just describes that that as a whole satisfies the entirety of 1E, because the dispute that the board rejected was not a portion of 1E, but the entirety of 1E. But at least Netflix's position on appeal is that there was a portion of 1E that was not disputed between the parties, and the board went to that undisputed portion and filled in a construction that neither party had proposed for that undisputed portion. Tell me why that characterization of what happened procedurally is incorrect. Because the board never made an affirmative construction. They applied the plain and ordinary meaning, and they said that Netflix has to describe in their petition how the entirety of that limitation is satisfied. Did the board not implicitly require that what needed to be executable was the image instances as opposed to the software applications? Isn't that clearly the implication of how the board was construing 1E? No, Your Honor. What they were doing was they were applying what Netflix argued in the petition. What they argued in the petition were that these three types of disk files satisfy the entirety of 1E. So what they did was they went through the petition, and they said, let's map what you argue. And when they get to that section where it says, at best, what they say is, at best, you've shown or they've argued that the software applications are executable, but that is in direct contradiction to what they argued in the petition. With respect to the disk files being executed. And it wasn't just in one place. They argue it over and over and over again. They argue, for example, they said in the second reply, they said, the claim language that requires the image instances need only be executable. In their first reply, they said it twice. They said, with respect, now remember, in the claim language there are two sets of image instances. One is image instances of the virtual machine manager, and the second is the image instances of the software applications. So in their first reply, and you can see this on Appendix 2224, they said the claims only require that those images, the images of the virtual machine manager, are executable on the plurality of application nodes. Then they said with respect to the image instances of the software applications, on Appendix 2233, they said, it is the claim language, not the petitioner, that omits the patent owner's process by requiring that the images need only be executable, not actually executed. They point us to at least one instance where your expert seems to say it's the software applications that need to be executable. The software applications are executable, but what needs to happen is the image instances of the image instances need to be executable. If you look at the totality of Claim 1, this makes sense. So if you look at, as an example, the first set of image instances, in Section 1D it says, now remember, these are the image instances of the virtual machine manager. It says, wherein when executed on the application nodes, the image instances of the virtual machine manager provide a plurality of virtual machines. That's the antecedent basis for the virtual machines down in Limitation 1E. So there it is, the image instances of the virtual machine manager that are executable. And then when you talk about the image instances of the software applications, you look at the second part of the claims. The first part of the claim talks about the software applications repository, and the second part of it deals with the control node. What happens is you copy the image instances of the virtual machine manager onto a node, a hard computer. Then those image instances of the virtual machine manager execute, create virtual machines, which then the image instances of the software applications go down on top of. And so what the board said is, you, Netflix, have argued that the image instances are what are executable, and the only part where they, you know, they said that they argued this in the petition, that the software applications are executable. There's a single sentence that talks about the second half of Limitation 1E, which is that are executable on the plurality of virtual machines, and it's the very last sentence in Section 1E, and you can see this on Appendix Page 177. It says, as explained above, each pre-built, custom-built, and instantly deployable VM includes a virtual disk image file with an operating system and applications that are executable on the virtual machines. Where it says, as explained above, the entirety of that section is simply talking about the plurality of image instances of the software applications. So if we reach the merits of what is the proper construction of that last portion of 1E, what should we say is the correct construction? The correct construction would be plain and ordinary meaning. Meaning what has to be executable, the image instances or the applications? Well, Netflix certainly argued that the applications need to be executable. And what's your position? The image instances, the entirety of the claim requires the image instances to be executable. Now, the software applications obviously are executable as well, because that's the whole point of having software applications on a computer. But the way this claim works is there are two sets of images. Are you defending the Board's implicit claim construction, or are you not? I don't think the Board made an implicit claim construction. That's what we said in the brief. And the reason for that is because what they did is they rejected their claim construction, they said plain and ordinary meaning, then they looked at the petitions, and under these two theories, the first theory clearly says under Netflix's view that the image instances are what need to be executable, and they said that you didn't explain how those image instances are executable on the plurality of virtual machines. Because that was the construction that they rejected because Netflix did not explain how because image instances are one thing, but the claim requires specific types of image instances. Image instances of software applications that are executable on the virtual machines. So what the Board did is looked at the evidence in the petition and said you didn't argue, you didn't set forth, you had no explanation for why the theory is that are executable on the virtual machines. And what we said in page 14 of the brief in front of your honor, the problem with Condacard, and the problem with Netflix's position and why it's not clear, is they use the VMs, the three types of VMs, as both the image instances of the software applications and the virtual machines. But the virtual machines are from limitation 1D, and they never tie limitation 1E to limitation 1D, and that's what the Board said in all these theories. They said you provided no explanation as to how that happens, and you heard their counsel at the beginning of their argument, they don't talk about the virtual machines at all. It's not the same thing. And if you read the entirety of section 1E in both petitions, the entirety of that limitation is saying is exactly what their claim construction is, that was rejected. So it's not surprising that the Board found that the section 1E was deficient because their claim construction read that limitation out, and their evidence assumed that limitation out. Procedurally, if we do look at this case as one in which, yes, there was a dispute over 1E, but certain portions of 1E were not disputed, and then the Board implicitly construed 1E in a way that did something unanticipated to the undisputed portion of 1E. And so, given the happenstance of time, Netflix then came up with a new, clearer construction only after that all happened in the first final written decision, and you're not defending that the Board came up with the right construction, if, I know you don't agree with all that, but if that's how we see this case procedurally, what should we do? Is it proper what Netflix did in coming up with the new construction and its reply in the second IPR, or is it not proper? No, Your Honor, it's absolutely not proper. And the Board set forth the standard, it says, at the outset, you have to argue with... Tell me this, sorry, in the remaining seconds, what made what the Board did proper, if that's how I see it? Yes, Your Honor, because the Board applied, plain and unerring, to what they argued in the petition, and they found under what you argued, you ignored the limitation part of that, that are executable on the plurality of virtual machines, that's why we rejected your claim construction, and that's why your petition for Section 1E fails, for the exact same reason. You don't give any meaning to that part of the limitation we'll need. Thank you, Your Honor. Mr. Bass, do you have something to walk us through? Thank you, Your Honor, there's quite a bit to unpack there, but I'm just going to start with one logical fallacy. The institution decision went forward, they granted institution, even though the Board didn't adopt Netflix's construction. They went with a plain and unerring meaning construction, if Avago's argument is to be followed by its logic, he said they should have never instituted, because they rejected Netflix's construction, or they didn't adopt Netflix's construction. They adopted a plain and unerring construction, but in the institution decision, they never said plain and unerring means that executable refers to image instances, rather than the software applications. The first time we saw that was in the final written decision. And I do think the Valencel Fitbit decision that we cited to here in our briefing is relevant, because as that case said, you can't just stop your analysis at the Board when you reject a petitioner's construction. You have to go through and apply the construction that you're applying to the claims. So here, we need to have a review of the construction that they actually applied. Yes, it was a plain and unerring meaning, but this Court is full of decisions that says plain and unerring meaning can still be a construction. So I don't think it's credible for him to say that there wasn't an affirmative construction in response to your questions, Judge Stark. There clearly was an affirmative construction. He hypothesizes, and there's a lot of conjecture there of what the Board was thinking, but we have a single sentence in the final written decision on this point that just says you didn't show that the image instances are executable. And I do think that, again, they had no response on the claim construction issue. None of the evidence that we submitted, they had no response. I think I heard for the first time that they said now that they do agree that the imaged instances are executable, but I'm not quite clear on that. But they've also conceded now in response to your questions, Judge Stark, that the software applications are executable. So I don't think there's even a dispute if it gets remanded back under the claim construction. The only issue that the Board needs to now address is the three-step process argument that was their main thrust argument that they dedicated almost all their briefing and oral argument to. And I just want to note my last point, and I'm happy to answer any other questions, but that's a lot of what you heard from him in his arguments about justifying the decision was again, it was under the guy's different wording, but it's still the three-step process argument. If you look at the antecedent basis, if you look at what was earlier in the claims, all this other claim language, that's their three-step process argument. The Board hasn't ruled on that three-step process argument. There's nothing for you to look at yet for that argument. That argument still remains to be decided. So it certainly can't be the basis for an affirmance here today. So I urge that this be remanded under proper claim construction so the Board can consider that three-step process argument, and I'm happy to answer any other questions. Thank you to both counsel and thank you to the submitters.